UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60224-RUIZ/STRAUSS

**PAULINE MORGAN,**

    Plaintiff,

v.

**THE HOME DEPOT, INC.,** *et al.***,**

    Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendants' Motion for Summary Judgment ("Motion") [DE 54], which has been referred to me to take all action as required by law [DE 65]. I have reviewed the Motion, Defendants' Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment ("SOF") [DE 55], all attachments to the SOF [DE 55-1 through DE 55-5], and all other pertinent portions of the record. No response to the Motion has been filed, and the time to file a response has passed. *See* [DE 58, 63]. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 54] be **GRANTED**.

## BACKGROUND[1]

This case arises out of injuries that Plaintiff sustained when she went to a Home Depot store to purchase a stepstool. SOF ¶ 5. At the store, Plaintiff selected a 2'6" Tricam model GLA-3-2 stepstool ("Stepstool") and opened it. *Id.* ¶¶ 1, 6. The Stepstool has two steps and a platform,

---

[1] I find that the facts set forth in the SOF [DE 55] – except for paragraph 31 of the SOF (which solely relies on Home Depot, Inc's unsworn objections to a request for production) – are supported (and not controverted) by the evidence that Defendants have submitted in connection with the Motion, and therefore, accept such facts as undisputed for purposes of the Motion. Again, Plaintiff has not responded to the Motion (or the SOF).

and it contains various warning and instruction labels.  *Id.* ¶¶ 1, 2.  Plaintiff read a label on the Stepstool containing a 250-lb. duty rating.  *Id.* ¶ 7.  Aside from that label, however, Plaintiff cannot remember what else was written on the Stepstool.  *Id.* ¶ 8.  And she did not read any instructions on the Stepstool.  *Id.* ¶ 9.

After selecting the Stepstool and reading the duty rating, Plaintiff climbed the Stepstool. *Id.* ¶ 10.  Before doing so, Plaintiff "did not see anything broken or wrong" with the Stepstool.  *Id.* ¶ 11.  When Plaintiff stepped on to the Stepstool, she fell.  *Id.* ¶ 12.  When Plaintiff fell, she hit a structural beam (i.e., a beam connected to the ceiling).  *Id.* ¶ 15.  Plaintiff did not know why she fell, but neither the beam nor the display area caused her to fall.  *Id.* ¶¶ 13, 16.  After Plaintiff fell, she noticed that the right leg of the Stepstool was broken.  *Id.* ¶ 14.

Defendant Tricam Industries, Inc. ("Tricam") designed and contract-manufactured the Stepstool in accordance with ANSI A14.11.  *Id.* ¶ 3.  The Stepstool passed all ANSI A14.11 tests, including those applying a 1000 lb. load on the Stepstool and a 125 lb. load on the level of the first step in the direction that the Stepstool failed.  *Id.* ¶ 4.

Defendants have retained – and disclosed – Jon Ver Halen ("Defendants' Expert") as an expert in this matter.  *See id.* ¶ 17; [DE 55-1].  The record does not indicate that Plaintiff has disclosed or retained any expert.  The Stepstool is in the possession of Defendants' Expert.  SOF ¶ 17.  Defendants disclosed the Stepstool's location in March 2023.  *Id.* ¶ 18.

In his expert report, Defendants' Expert provides the following unrebutted expert opinions:

1. The subject stepstool was reasonably safe as designed and built. It met the requirements of ANSI A 14.11-2018.

2. No manufacturing or material defects were found in the subject ladder.

3. The damage on the subject ladder could not result from normal use. The stress whitening of the aluminum oxide coating on the ladder and the buckling of the brace indicates that the stress causing failure was predominantly side-to-side with some front-to-rear loading. Typical use of the stepstool results in predominantly rear-to-front loading of the rail.

      4. The forces required to cause failure of the side rail and brace could not occur during normal use. If forces of the magnitude required to cause failure were applied to the stepstool, it would tip over before failing. The damage could only have reasonably occurred with the ladder on its side and the right front rail being subjected to a downward force.

      5. The direction and magnitude of forces could be created by a person, like [Plaintiff], falling on the side rail during an accident.

[DE 55-1].

In addition to providing the foregoing opinions in his expert report, Defendants' expert also explains the basis for his opinions in his report. When he examined the Stepstool, he confirmed there were no manufacturing defects. SOF ¶ 19. Additionally, he determined that Plaintiff's fall did not occur during normal use. *Id.* ¶ 20. Rather, because the Stepstool tipped over, Plaintiff fell, and she landed on the Stepstool's leg. *Id.* Upon examination, the Stepstool showed "signs of stress whitening, where the rail becomes whiteish due to the crazing of the brittle aluminum oxide." *Id.* ¶ 21. "This whitening indicates that the rail broke due to a force primarily laterally inward on the siderail and from the front rail towards the rear." *Id.* ¶ 22. Significantly, "[t]he direction of failure is not a direction of heavy loading during normal use." *Id.* ¶ 23. With normal use, the side rail is loaded such that the foot moves "away from the rear of the stepstool." *Id.* ¶ 24. If a side rail is defective or overloaded, it will break away from the rear of the stepstool. *Id.* ¶ 25.

Here, whitening seen on the rail and the buckling of the brace confirm that the Stepstool "failed inward, towards the left front rail and slightly to the rear." *Id.* ¶ 26. "The only reasonable way sufficient forces could be applied in this area of the stepstool, in the direction that caused the failure, is to place the stepstool on its side and strike it with considerable force." *Id.* ¶ 27. Thus, Defendants' Expert concluded, the Stepstool broke when Plaintiff lost her balance or mis-stepped, fell, and struck the Stepstool. *Id.* ¶ 28.

3

Notably, "[t]he loads applied during the ANSI tests required are significantly greater than any reasonable load that could be applied during regular use." *Id.* ¶ 29. In contrast, the scenario described by Defendants' Expert, "with the stepstool falling in the opposite direction of the user, has been replicated by the CPSC, the ANSI A14 committee, and [Defendants' Expert]." *Id.* ¶ 30.

## SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (internal quotation marks omitted) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* (citing *Celotex*, 477 U.S. at 322-23). *See also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (The movant may satisfy its burden "by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case." (citing *Celotex*, 477 U.S. at 325)). Provided

that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Hornsby-Culpepper*, 906 F.3d at 1311-12.

To establish a dispute of fact sufficient to avoid the entry of summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. 242). Nevertheless, courts "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted). Moreover, all reasonable doubts regarding the facts must be resolved in favor of the non-moving party. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted).

## **ANALYSIS**

In the five-count Amended Complaint [DE 24], Plaintiff brings products liability claims for negligence and strict liability, alleging design and manufacturing defects, as well as a failure to warn. In the Motion, Defendants argue they are entitled to summary judgment for multiple independent reasons. First, Defendants argue that all of Plaintiff's claims fail because Plaintiff will not be able to establish the essential elements of defect and causation given that she has not disclosed an expert (expert disclosures were due in September 2023, *see* DE 15). Second, Defendants argue that Plaintiff's manufacturing defect claims also fail because there is no evidence that the Stepstool deviated from its intended design or from other GLA-3-2 stepstools. Third,

Defendants argue that Plaintiff's design defect claims fail because the GLA-3-2 was reasonably safe. Fourth, Defendants argue that Plaintiff's failure-to-warn claims fail because Plaintiff lacks evidence showing that inadequate warnings proximately caused Plaintiff's injuries.

Although Plaintiff has failed to respond to the Motion and SOF, I have considered the merits of the Motion and Plaintiff's claims in this case – albeit without the benefit of a response or evidence from Plaintiff. Having done so, I agree with Defendants that, based on the summary judgment evidence, there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.[2]

### A. DESIGN AND MANUFACTURING DEFECT CLAIMS

Defendants are entitled to summary judgment on Plaintiff's design and manufacturing defect claims. A plaintiff pursuing a product defect claim – whether for negligence or strict liability – "must show '(1) that a defect was present in the product; (2) that it caused the injuries complained of; and (3) that it existed at the time the retailer or supplier parted possession with the product.'" *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1297 (11th Cir. 2022) (quoting *Lesnik v. Duval Ford, LLC*, 185 So. 3d 577, 581 (Fla. 1st DCA 2016)). Thus, the presence of a "defect" is one of the essential elements of Plaintiff's design and manufacturing defect claims. *See, e.g.*, *Zuccaro v. Tricam Indus., Inc.*, No. 9:21-CV-80867, 2022 WL 17750747, at *4 (S.D. Fla. Sept. 13, 2022) ("To prevail in a products liability case under Florida law for either negligence or strict liability, Plaintiff must establish a defect in the subject product.").

---

[2] In addition to the arguments noted above, Defendants argue that – even if Plaintiff could proceed on any of her claims – Home Depot, Inc. is not a proper defendant. Defendants also claim that that they should be granted summary judgment on Plaintiff's request for punitive damages (even if any of Plaintiff's claims survive summary judgment). Because I agree that Defendants are entitled to summary judgment on all of Plaintiff's claims, I do not reach Defendants' arguments regarding the issues of punitive damages and whether Home Depot, Inc. is a proper defendant.

First and foremost, Defendants contend that Plaintiff's failure to disclose an expert means that Plaintiff will not be able to establish a defect in the design or manufacturing of the Stepstool. In support of this argument, Defendants point to cases in this district holding that expert testimony is required to prove the existence of a defect. *See id.* ("[D]efects 'must be proven by expert testimony.'" (citations omitted)); *Penick v. Harbor Freight Tools, USA, Inc.*, No. 19-CV-23134, 2020 WL 6581606, at *5 (S.D. Fla. Nov. 10, 2020) (same); *Pierre v. Intuitive Surgical, Inc.*, 476 F. Supp. 3d 1260, 1269 (S.D. Fla. 2020), *aff'd*, 854 F. App'x 316 (11th Cir. 2021) ("Plaintiff must also provide expert testimony to prove a design defect, and failure to provide such testimony is fatal to plaintiff's claim." (citing *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1225 (M.D. Fla. 2009))). While there may perhaps be certain situations where it is possible to establish the existence of a defect without expert testimony,[3] Plaintiff – who, again, has not responded to the Motion – has provided no authority or evidence to show that Plaintiff can establish a defect here without expert testimony. Likewise, Plaintiff has not provided any authority contrary to *Zuccaro* and *Penick*, which, among other cases in this district, have required expert testimony to prove the existence of a defect.

Regardless, Defendants have demonstrated in the Motion that there is an absence of evidence to support the existence of a defect, and, by not responding to the Motion (or SOF), Plaintiff has not shown otherwise. As explained above, the undisputed evidence shows that: (1) Tricam designed and contract-manufactured the Stepstool in accordance with ANSI A14.11; (2) the Stepstool passed all ANSI A14.11 tests, including those applying a 1000 lb. load on the Stepstool and a 125 lb. load on the level of the first step in the direction that the Stepstool failed;

---

[3] *Cf. Worsham v. A.H. Robins Co.*, 734 F.2d 676, 685 n.8 (11th Cir. 1984) (emphasis added) ("[E]xpert testimony is *often* required to establish defective design of a product.").

and (3) loads applied during ANSI testing substantially exceed any reasonable load that could be applied during regular use. Moreover, Plaintiff has not refuted Defendants' Expert's opinions that the Stepstool was reasonably safe as designed and built, that it met the requirements of ANSI A14.11-2018, and that it revealed no manufacturing or material defects upon examination. Likewise, Plaintiff has not provided any evidence to refute Defendants' Expert's determination that the Stepstool broke due to Plaintiff striking it as she fell after losing her balance or mis-stepping.[4] Simply stated, based on the summary judgment evidence, a reasonable jury could not conclude that the Stepstool has any defect. Therefore – and because Plaintiff is not entitled to an inference that a manufacturing defect existed (as discussed in the paragraphs that follow) – Defendants are entitled to summary judgment on Plaintiff's design and manufacturing defect claims.

Plaintiff's strict liability manufacturing defect claim could potentially survive summary judgment if the *Cassisi* inference applied here.[5] "Under Florida law, the *Cassisi* inference allows a jury to infer that a product is defective when it (a) malfunctions (b) during normal use." *Edic ex rel. Edic v. Century Prod. Co.*, 364 F.3d 1276, 1280 (11th Cir. 2004) (citing *Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1148 (Fla. 1st DCA 1981)); *see also McCorvey v. Baxter Healthcare Corp.*,

---

[4] I note that Plaintiff's deposition testimony [DE 55-3] does not squarely show that Plaintiff did not mis-step or lose her balance.

[5] "[T]he *Cassisi* inference is only applicable to product liability claims predicated on *manufacturing* defects; it is not applicable to product liability claims predicated on design defects or inadequate warnings." *Lidey v. Moser's Rides, SRL*, No. 8:16-CV-1241-EAK-JSS, 2018 WL 6308690, at *6 (M.D. Fla. Aug. 13, 2018); *see also Witt v. Stryker Corp. of Michigan*, 648 F. App'x 867, 875 (11th Cir. 2016) ("We are aware of no Florida case where the *Cassisi* inference has been applied in a defective design case. . . . Because Witt's claim was for defective design, the *Cassisi* inference is of no benefit to her."); *Zanakis v. Scanreco Inc.*, No. 1:18-CV-21813-UU, 2019 WL 2215816, at *4 (S.D. Fla. Apr. 9, 2019) (emphasis added) ("In the context of a *manufacturing defect strict liability claim*, a plaintiff may also establish the inference of a manufacturing defect by application of the '*Cassisi* inference[.]'").

298 F.3d 1253, 1258 (11th Cir. 2002) ("In Florida strict product liability actions, a legal inference is created that the subject product was defective at both the time of injury and the time of sale when that product 'malfunctions during normal operation.'" (citation omitted)).  In other words, "Florida's *Cassisi* inference provides that when a product malfunctions during normal operation, a legal inference of product defectiveness arises, and the injured plaintiff thereby establishes a prima facie case for jury consideration." *Edic*, 364 F.3d at 1284 (cleaned up) (internal quotations marks and citation omitted).

However, the *Cassisi* inference does not save Plaintiff here.  Significantly, given that Plaintiff has failed to respond to the Motion, she has failed to argue that *Cassisi* applies. *Cf. Witt*, 648 F. App'x at 875 ("[W]e believe Witt has waived this issue by failing to raise *Cassisi* or the related inference before the district court.").  Moreover, case law has suggested that it would be inappropriate to apply the *Cassisi* inference in a case like this, where the Stepstool still exists and could have been inspected by Plaintiff or an expert retained by Plaintiff. *See Ainsworth v. KLI, Inc.*, 967 So. 2d 296, 302-03 (Fla. 4th DCA 2007); *Cannioto v. Louisville Ladder, Inc.*, 449 F. App'x 797, 798 (11th Cir. 2011); *Zuccaro*, 2022 WL 17750747, at *4 ("The policy considerations underlying *Cassisi* are not present here as the [Stepstool] in question still exists and could have been inspected by Plaintiff's chosen expert." (citing *Cannioto v. Louisville Ladder, Inc.*, No. 8:09-CV-1892-T-30TBM, 2011 WL 2014260, at *3 n.1 (M.D. Fla. May 20, 2011)); *see also Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1302 (M.D. Fla. 2011).[6]  Additionally, Plaintiff's

---

[6] I recognize that "*Cassisi* allows, *but does not require*, that the product be destroyed in the accident which gives rise to the suit." *McCorvey*, 298 F.3d at 1259 (emphasis added); *see also United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1343 n.3 (11th Cir. 2013).  However, the fact remains that Plaintiff has not provided any evidence or argument to show that the *Cassisi* inference applies here.  Moreover, Defendants' Expert has provided unrebutted evidence, based on his examination of the Stepstool, that Plaintiff's fall did not occur during "normal use."

limited deposition testimony hardly shows that the Stepstool malfunctioned. *Cf. Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1302 (11th Cir. 2011); *see also Ainsworth*, 967 So. 2d at 302-03 (finding that plaintiff's lack of evidence of a malfunction precluded reliance on the *Cassisi* inference). Therefore, the *Cassisi* inference does not allow Plaintiff to survive summary judgment.

For the foregoing reasons, Defendants are entitled to summary judgment on Plaintiff's claims premised upon design and manufacturing defects.

### B. FAILURE-TO-WARN CLAIMS

Defendants are entitled to summary judgment on Plaintiff's failure-to-warn claims. A plaintiff must establish the following to prevail on a failure-to-warn claim: "(1) that the product warning was inadequate; (2) that the inadequacy proximately caused her injury; and (3) that she in fact suffered an injury from using the product." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021) (quoting *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1321 (11th Cir. 2017)).

Defendants argue that Plaintiff's failure-to-warn claim fails because she does not have evidence that inadequate warnings proximately caused her injury. I agree. As Defendants note, "[u]nder Florida law, [a] plaintiff's failure to read the warning label extinguishes proximate cause in a failure to warn claim." *Pinchinat v. Graco Children's Prod., Inc.*, 390 F. Supp. 2d 1141, 1148 (M.D. Fla. 2005); *see also Leoncio v. Louisville Ladder, Inc.*, 601 F. App'x 932, 933 (11th Cir. 2015) ("Florida law is clear that Mr. Leoncio's failure to read the warning cuts off Louisville Ladder's liability based on the alleged inadequacy of the warning."); *Lopez v. S. Coatings, Inc.*, 580 So. 2d 864, 865 (Fla. 3d DCA 1991) ("Where the person to whom the manufacturer owed a duty to warn . . . has not read the label, an inadequate warning cannot be the proximate cause of the plaintiff's injuries."); *Ashby Div. of Consol. Aluminum Corp. v. Dobkin*, 458 So. 2d 335, 337 (Fla. 3d DCA 1984) ("Although plaintiff insists that the jury could have determined that defendants

10

were negligent in failing to warn or instruct, the undisputed evidence shows that plaintiff did not read the instructions on the ladder and therefore any failure to warn could not, as a matter of law, be the proximate cause of plaintiff's injuries."); *Brosius v. Home Depot Inc.*, No. 6:20-CV-1136-ACC-DCI, 2022 WL 1272087, at *15-16 (M.D. Fla. Feb. 8, 2022).

Here, as explained above, the Stepstool contains various warning and instruction labels. SOF ¶ 2; *see also* [DE 55-2] (containing photographs of warnings and instructions on the Stepstool). However, at her deposition, Plaintiff could only recall reading a 250-lb. duty rating on the Stepstool; she could not remember what else was written on the Stepstool, and she did not read any of the instructions on the Stepstool. SOF ¶¶ 7-9; *see also* [DE 55-3] at 5 (page 16 of Plaintiff's deposition transcript). And Plaintiff has not provided any other evidence (or argument) bearing on the Stepstool warnings, the adequacy of the warnings, or whether the warnings caused her injury. In light of Plaintiff's deposition testimony that she did not read any of the instructions on the Stepstool, and given that Plaintiff has not raised any arguments in response to the Motion, I find that Plaintiff will not be able to establish proximate cause on her failure-to-warn claims. Therefore, Defendants are entitled to summary judgment on Plaintiff's failure-to-warn claims.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **GRANT** the Motion [DE 54].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained

in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 29th day of November 2023.

*[signature]*
Jared M. Strauss
United States Magistrate Judge